May it please the Court, there appears to be no consensus between different circuits about how to determine what religious conflict is and what it takes to show religious conflict in the context of Title VII. As the Dietweiler Court recently pointed out, as this circuit recently pointed out, the six, seven, and eight circuits have a much broader interpretation of religious conflict, and those circuits would certainly reverse the summary judgment in this case. However, even this circuit appears to treat religious conflict differently in different cases. For instance, in the ongoing Keene v. Sidian County of San Francisco case, this Court held at the injunction hearing, relying on the Supreme Court case of Thomas v. Review Board, that a religious belief need not be consistent or rational to be protected under Title VII, and an assertion of sincere religious belief is generally accepted. The Keene panel concluded that the District Court erroneously held that the appellants had not asserted their sincere religious belief because they were not sufficiently scientifically accurate and remanded the matter. In Doe v. San Diego Unified School District, this Court said, we may not question the legitimacy of appellants' religious beliefs regarding COVID-19 vaccinations. So, Counsel, if you could talk about our recent Detweiler case. That was the case we asked for supplemental briefing on. I've read your supplemental brief. I understand you're not a fan of the Detweiler case, understandably, but as of right now, that is the controlling law of this circuit. So, tell us, how do we, to get where you want to go, how do we get around Detweiler? Yes, Your Honor. Absolutely. So, I'm a big fan of Justice Van Dyck's decision. It's so eloquent. It points out everything that I would like to say. I'll make sure he knows. I'll send him the video of you saying that. Thank you. So, given that Title VII says, the Congress said, all forms of religion are protected, given that the Supreme Court said that the courts are not to overanalyze, not to scrutinize, not to dissect which is secular and which is sufficiently religious conflict in this context, given that EEOC said that when the conflict is both religious and secular at the same time, it doesn't lose the protection, and given that in this case, Ms. Ledesma provided a very detailed exemption letter where the very first paragraph, even the last sentence of the first paragraph says, this demand for an exemption is based on my deeply held religious beliefs pursuant to my reliance on teachings in the Holy Bible, citing with a bunch of verses the fact that she points out some safety concerns down the road that creates the exact combination of religious and secular concerns, which EEOC and the Supreme Court envisioned when they said, look, if there are safety concerns, scientific concerns, secular concerns, and religious concerns, the religious concerns are still protected because the Congress, the Congress defined the religion so broadly. Now, this is a summary judgment case. At the very least, there is a triable issue of fact here, whether the appellant, Ms. Ledesma, sufficiently expressed a religious conflict in this case. I hate to cut you off, but it seems to me that what you're saying, and I appreciate the argument, is that we got it wrong in Detweiler. That's what I'm hearing, and fair enough, and they filed a petition for rehearing in that case, and maybe this Court will take it up. I don't know. But right now, Detweiler is the controlling law. So why is it that if Detweiler is the word we've got to follow, I'm still not hearing why this case is different than Detweiler. How do we get around that case? Your Honor, there are similarities between requests for exemptions. They both list some religious objections to the vaccine and also some secular objections. The appellant believes that her request for religious exemption is arguably more detailed. Two or three verses of Bible are cited and immediately connected to her explanation, which is more than any layperson could ever be expected to explain. Excuse me. It seems like one distinction is Detweiler was at the motion to dismiss stage, and I think you know this is at the motion for summary judgment stage. So should we expect more in terms of response or at this point as to the justification for the religious exemption from the plaintiff than what was presented at the motion to dismiss stage? No, Your Honor. Your Honor, given that the burden that all reasonable inferences should be in favor of the nonmoving party at the summary judgment, and given that plaintiff provided some, more than some evidence of her religious objection. Was it the same as what she provided at the motion for to dismiss stage? I know this case did survive the motion to dismiss stage, correct? Correct. I guess nobody moved to dismiss, is that right? I'm sorry? In this case, no one moved to dismiss? Correct. I'm sorry. Yes, in this case, no one moved to dismiss at the early stage, is that correct? Correct. There was a dismissal of one duplicate claim, but generally there was no full motion to dismiss. Okay. Correct. And the development of the record does not seem that significant. Given the opportunity to explain more, it doesn't seem like there was more. You're saying just whatever you provide at the motion to dismiss stage will likely sustain you all the way through the motion summary judgment, no need to have discovery in these kind of cases? I'm trying to understand, and some of it is just the posture of this case compared to Dettweiler.  Yes, Your Honor. Plaintiff provided her initial request for exemption, then her letter. There were depositions taken where the employer said that we accepted your religious beliefs as sincere. There was never a question of why she was terminated. There was never a question about the sincerity of her beliefs or a question of conflict. But it seemed in Dettweiler and here that it could be argued that it was more secular and not sufficiently based on her religious convictions. Well, I would submit to the Court that this is way more religious. The request for exemption here, which is one of the exhibits to the appeal, is much more detailed. We have at least four or five paragraphs immediately connecting Bible verses to the plaintiff, to the appellant's religious convictions. That's how I see this is different than Dettweiler, because in Dettweiler it was just a general religious belief that your body is a temple. But here I feel like the record is much more specific. Like I'm looking at the statement, the COVID-19 shot works as a gene therapy. By manipulating genetic operations, the COVID-19 shots alter what God made, literally assuming the position of God, which I believe to be a sinful practice under these circumstances. That's very specific religious belief that's tied to the COVID vaccine, correct? And isn't that different than in Dettweiler?  It's much more specific. It's much more elaborate. It's more elaborate than the Congress or U.S. Supreme Court would ever expect. And it's much more elaborate than the plaintiffs in Keene, in Keene, and even that case was reversed. And there the injunction was awarded. It was on Keene, I know that. Right. That's why I'm mentioning it. I know. Right. So if that case in this very courtroom was ruled unfavorably, surely this case, surely this case should be ruled favorably. Ms. Ledesma did way more than any lay person could possibly be expected to overcome summary judgment and create a triable issue of fact. Did you want to reserve the balance of your time? Yes. Thank you. May it please the Court, Don Soloway of Cypress Shaw for the appellee Optum, Inc. Your Honors, Optum asks that this Court affirm the District Court's grant of summary judgment for Optum for four different reasons. First, as the District Court held and as we've been discussing this morning, the plaintiff failed to establish a religious belief as a matter of law. Alternatively, the plaintiff is not able to establish a prima facie case because she can't show a conflict with vaccination as a matter of law or that she informed Optum of her actual views as to any sincere religious conflict. And even if she could establish a prima facie case, Optum has demonstrated an undue hardship as a matter of law.  So, Counsel, would you agree that the statement COVID shots alter what God made, literally assuming the position of God, which I believe to be a sinful practice under these circumstances, is a religious belief? Not in the context of this record, Your Honor. Well, just answer that question, yes? The answer is no, not in the context of this record. And that's – and I say that because here we have the submission that she gave to the   She admitted that that was an Internet form and that she pulled – that she just took it off the Internet because – And she admitted that she agreed with it, correct? Well, Your Honor, I think what she said under oath was that it was due the next day, so it just went online, looked for something. I didn't think much of it. I just thought, well, they need to have some documentation. And she admitted that she didn't write a single word. And that she took out the parts that she disagreed with. She did say that. And submitted the things that she agreed with. So why can't we take this as her statement of religious belief? Because, Your Honor, she was also deposed, and here's where it's important that this is a summary judgment case. Yes. So we have the benefit of a full record, and we have not only her admissions that this was just an Internet form that she didn't write herself, but she was asked open-ended questions. Is there a requirement that she write it herself? Well, Your Honor, I think it's important to take into account the full context, and she was asked an open-ended question under oath. She didn't disavow it, correct? Well, I think she indicated... She said she agreed with it. Your Honor, I believe that we have to look at the full context of the record. Yes. And she said she agreed with it. And what she said is that she just took it off the Internet to sort of check the box for documentation without thinking a lot about it. But I think most importantly, she was asked under oath, in a very open-ended question, what is your objection to COVID vaccination? Yeah. And there she gave a detailed question, answer under oath. She said that her body was a temple. So your position is we can't consider anything that was submitted to Optum? Well, I think, Your Honor, it's important that she admitted that, under oath, that her real objection... No, I'm just asking you, can we not consider anything that was submitted to Optum? I think we should consider the full context. Okay. And so one of the statements is this very specific religious statement, correct? No, I don't believe so, Your Honor. So I think, first, I think we have to look at what... I think we have a problem with it. Is it not specific? I don't think that's the issue, Your Honor. Okay. And is it not religious? It is not religious as a matter of law. So... So the statement that COVID-19 alters what God made is not a religious statement? Well, I think, Your Honor, again, I think we have to look at the whole record. No, just... I don't think you can look at... As an isolated statement, is that religious or not? I don't think you can take one piece of an Internet form and look at that in a vacuum. I think you have to look at the full context. And when you say the full context, I am interested in what you'd like to highlight. I want to know what you're highlighting in her deposition that you think counters what my colleague here is focusing on in terms of the religious statement, whether it's an Internet record, but it's one that she apparently adopted and submitted. So can you point to me what your best argument is as to why what she said would somehow neutralize or not give effect to the religious references? Yes, Your Honor. So she was asked an open-ended question at deposition. What is your objection to the COVID vaccine? And she said that she believes her body is a temple, so just like Dettweiler. And she said that she comes from a Mexican tradition of holistic treatments and believes in homeopathy. And she said, quote, you try to lessen the harm that you do with anything, unquote. Quote, you have autonomy over your body and you are to decide what's good for you and what's not good for you, unquote. She also then admitted that she didn't actually know either way whether the vaccine would cause harm. So that was her admission under oath as to her actual objection to the vaccine. And I think if we look at, as Your Honors were discussing, the controlling law in this circuit is the Dettweiler case. And this case is extremely similar to that case. Only if you ignore the letter she submitted to Optum, correct? No. No, Your Honor. I don't believe so, respectfully. I believe that you have to look at the full context. Now, she, again, she was asked an open-ended question. She could have said anything. She could have said the quote that you're pointing to. But she didn't disavow it. So did she have to recite the letter again in order, at deposition, in order to get it in the record? No, Your Honor. But I think when she was asked an open-ended question, she could have referred back to pieces of the letter. Instead, she repeatedly said, I didn't think that much about it. She did try to refer to the letter, and someone stopped her from doing that. Instead, she repeatedly said what? She repeatedly said that I didn't think that much about the form, the Internet form. I just needed something. It was due the next day. She repeatedly used that. She used that. Do you have the ER site for that? Yes. It's in multiple places, including ER 164 to 165. And I think what the Detweiler court focused on is that the plaintiff has to show a sufficient nexus between religion and a specific belief that's in context, in conflict with the requirement, and that just invoking broad religious tenets can't convert secular preferences into religious convictions. And so I'm curious here, because this does set up sort of similar facts, but at different stages. Detweiler was at the motion to dismiss. This is a motion to summary judgment. So I'll try to ask you the same question I asked your friend across the aisle here. Does that matter? Do we expect more of an explanation, or if there's some question of what was filed at the beginning to bear out in a motion for summary judgment? And I think this may be a question related to my colleague here. Or can we combine? And if we combine, is that not enough? Well, I think, Your Honor, we have here the benefit of a full record, right? So the Detweiler court dismissed just on the basis of the complaint. Here we have the benefit of a full record, including her sworn deposition admissions. And I think whether you look at the Internet form or her sworn admissions, in either you have a very similar sort of syllogism as you had in the Detweiler case. So in Detweiler, the court looked at and sort of said, even if you agree that body as a temple is a religious belief, even if you agree that it's a religious belief that it's important to not put harmful things into your body, that the core in Detweiler was the idea that the plaintiff believed that the nasal swabs were a carcinogen. And here, very similarly, you have a plaintiff who's saying in her deposition, my body is a temple. She said that she believes in self-autonomy, that she doesn't want to put harmful substances into her body. But the core, as the district court held, is the idea that the vaccine may do more harm than good. And if you look at the Internet form or her sworn admissions, she repeatedly refers to secular concerns about the vaccine. So in the Internet form — Can I ask, though, if she mentioned at the deposition the concern about gene manipulation and that alters what God had made, then would you admit that this takes us out of Detweiler? Your Honor, I think you have to look at the context of the whole record. I'm just asking hypothetical. Right. I think it's hard to peg it to any one sentence. I think you need to look at the full context. But you would agree that's different than Detweiler, right? I'm sorry, what is — If she said — the reference to gene manipulation and how that alters what God has made, that takes us — that's very different than Detweiler. I mean, I think the point of Detweiler is that the core conflict that she identifies is the idea that the nasal swabs are carcinogens. Right. So this is different then, right? Because here we're talking about gene manipulation, which alters what God has done. No, Your Honor. I think here the core belief is the idea that the vaccine does more harm than good. If you look at the Internet form, she says not only that she believes that shots work as gene therapy, which is a secular statement, but also that vaccines are potentially harmful, that they contain carcinogens, neurotoxins, animal viruses, animal blood, allergens — And it alters what God has made, right? — and heavy metals. So I agree that there is — those words appear in the Internet form. But — Didn't you agree that she said she agreed with everything on the Internet form, right? I believe what she said is that she looked through it. She didn't think much of it. She said that five or six times in her deposition. I agreed with what it says here, so I said — so I'll send it, right? And she said that she took out things that she actively disagreed with. Right. So that seems like a pretty thoughtful, deliberative process of what she submitted to Optum. Well, not according to her own admissions, Your Honor. She said she didn't think much of it. So, I mean, that's her own words. But she took out things that she disagreed with, submitted what she agreed with. She did say that. That's pretty thoughtful. She did say that she had taken out things that she disagreed with. I think it's also important to — She testified in her deposition. I think you referenced that. She did not write her exemption, but rather sourced it from a website. Is that right? Correct. Yep. And so, I guess, does the fact that she altered it later — and this is what you've been, I think, discussing here — have any bearing on our analysis to her religious belief? To what extent would that reflect her thoughtfulness about it? Well, Your Honor, she had an open-ended question in front of her. What is your objection to the vaccine? And what she told us is, you know, under oath and at length, is that it came from her Mexican tradition of holistic treatments and homeopathy and the idea of not doing your body more harm than good. And she also said, I decide alone, which amounts to an impermissible blanket privilege. And the Court addressed that at length in Detweiler, all the reasons why we can't have a system where you can just have a blanket privilege where you just choose what you'd like to do and what you would not like to do, that that's not a religious belief as a matter of law. So I think we're trying — I'm trying to figure out, you know, what are we focused on in determining the sincerity of her religious beliefs? Because that's the nexus that we need. Is that correct? It's a three-part test, Your Honor, for the prima facie case. A sincere religious conflict. Our position is that she has not established a religious conflict as a matter of law or a conflict at all because, of course, she admitted under oath that she didn't even know if the vaccine caused harm. The other question before — your time goes — well, it's already gone, but I want to ask you about the question of undue burden. Yes. If we reach that question here, there was some really kind of ambiguous reference in the record here, but what is your counterargument to Ms. Ledesma's assertion that she could have worked remotely? Well, Your Honor, again, we would look at her own sworn testimony where she admitted that she was a production pharmacist. So she was the one who was physically taking the materials and producing the packets that would go to these vulnerable patients. And she admitted under oath that she did that in person. And so I think that really — I think what she — maybe I'm wrong, but there was a reference that she knew others were working remotely. So, Your Honor, there were other pharmacists who had more of a clinical role where their job could be performed remotely, but she admitted — and it's undisputed in the record — that she needed to be in person. And, in fact, what she said, you know, is that she was asking to be allowed to work unvaccinated in person. So if you look at ER 184, that's where the company indicated to her that in her role as pharmacist it was not possible for you to never go in. You needed to have a physical presence. And she admitted in response at ER 183 that she admitted that she wanted to work in person, unvaccinated. Thank you very much. Thank you, Your Honor. We'll rest on our briefs. Uh-huh. Thank you, Your Honor. So to answer your question, this Court absolutely should look at the request for exemption. It's part of the record. It's admissible, relevant evidence. It's most immediate to the events that led to this case. So, deposition, yes. Request for exemption, absolutely yes. And as the Court pointed out, it's much more detailed and it's substantially different from the Dittweiler case. So what if she used the form? We all use forms every day. Where does it say in the law you have to come up from scratch with some theological essay about how to request an exemption? There is no such requirement. We all, including lawyers, use forms all the time. The burden to establish a religion is quote, unquote, minimal. The Supreme Court said it for decades now. And sincerity is usually not a question. The record here is not developed enough to challenge the sincerity or the religiousness of the appellant. Even the district court said that I don't want to talk about undue hardship here. There's definitely not enough record developed here to even get to the question of undue hardship, let alone rule on summary judgment that there is no tribal issue of fact of undue hardship. Lastly, Your Honors, the employer is trying to play gotcha. We ask you one open-ended question. You didn't spit out, you didn't vomit out every single thing, every single reason you objected to the vaccination. That's not the same as getting a plaintiff to admit that religion had nothing to do or had little to do with her exemption request. That's simply playing gotcha, and that's not a reason to grant summary judgment in this case. Thank you. Thank you very much. Is it Mr. Eichen? Okay. No, no. I just want to thank you for your argument presentation. And Ms. Holloway, I appreciate your arguments presented today. The case of Marie Ledesma v. Optum Services, Inc. is submitted.
judges: MURGUIA, OWENS, BUMATAY